UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| LISA M. FRANKENFIELD AND ) | |
| GUY M. GOTTHARDT, ) | |
| by and through their Conservator, ) | |
| Kelly Tayes Private Conservator, LLC, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 2:12-00054 |
| ) | Judge Sharp |
| WALTER M. STRONG, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

This case involves the horrific abuse of power and misuse of trust by a court-appointed conservator. It is before the Court on Plaintiffs Lisa M. Frankenfield's and Guy M. Gotthardt's[1] Motion for a Default Judgment (Docket No. 22) and request for damages.

The Court held a damages hearing in Cookeville, Tennessee on November 13, 2013, after which the parties were provided an opportunity to submit proposed findings of fact and conclusions of law. Plaintiffs, through counsel, submitted their proposed findings and conclusions on January 28, 2014, but Defendant Walter M. Strong, proceeding *pro se,* did not file anything post-hearing despite specifically being advised of his right to do so. For the reasons that follow, a default judgment will be entered in Plaintiffs' favor and they will be awarded damages and attorneys fees.

### I. FACTUAL BACKGROUND AND PROCEDURAL POSTURE

Lisa and Guy are mentally disabled. They were both declared disabled persons by the

---

[1] For ease of reference, the Court will refer to Plaintiffs as "Lisa" and "Guy."

1

Chancery Court of Clay County, Tennessee in August 2004. Defendant (who lived with and later married Lisa's sister Richelle Frankenfield) was appointed as Plaintiff's Conservator at that time.

In his role as Conservator, Defendant utilized Plaintiffs' funds as if they were his own. He also coerced Lisa into performing sexual acts, and required Guy to provide labor and services without remuneration.

Defendant was subjected to state scrutiny for his role as Conservator and, more specifically, with respect to his sexual abuse of Lisa and his misuse of funds. The Department of Human Services for the State of Tennessee filed a petition in the Chancery Court on July 5, 2011, seeking Defendant's removal as Conservator, and, in doing so, alleged that Defendant had threatened and abused Plaintiffs and financially exploited them. That same day, the Chancery Court enjoined Defendant from any contact with Plaintiffs, and on July 11, 2011, permanently removed Defendant as Conservator.[2]

On June 4, 2012, the Grand Jury for Clay County, Tennessee issued two Indictments against Defendant charging him with sexual battery by an authority figure in violation of Tenn. Code Ann. § 39-13-527 and theft of property valued in excess of $60,000 in violation of Tenn. Code Ann. § 39-14-103. He pled guilty to the theft charge and to the lesser charge of sexual battery in violation of Tenn. Code Ann. § 39-13-505, and was sentenced to two years (with release eligibility after serving 30% or his sentence) and ordered to pay restitution in the amount of $105,480.84 and court costs.[3]

---

[2] Kelly Tayes, who brings this action on behalf of Plaintiffs and who testified at the damages hearing, was substituted as their Conservator.

[3] In accordance with 18 U.S.C. § 1589 and to protect Defendant's Fifth Amendment right against self-incrimination, the Court stayed this case pending the outcome of the criminal proceedings. Defendant served the minimal sentence and has been released. He has only paid $350 towards his restitution and court cost obligations.

Based upon the foregoing events, Plaintiffs filed suit invoking this Court's federal question jurisdiction. They bring a federal claim alleging forced labor in violation of 18 U.S.C. §§ 1589 and 1595, and supplemental state law claims for sexual abuse, breach of fiduciary duty and conversion/embezzlement.

The foregoing are the underlying facts of this case and for legal purposes they are undisputed. Defendant did not answer or otherwise respond to the Complaint within the time required by the Federal Rules of Civil Procedure. Some fourteen months after the Complaint was filed, the Clerk of the Court entered a default because, even as of that late date, Defendant had not answered the Complaint. Thereafter, the Court set the matter for a damages hearing, liability having been established by Plaintiff's failure to answer or otherwise defend.

## II. EVIDENCE ADDUCED AT THE DAMAGES HEARING

At the damages hearing, the Court heard testimony from Defendant and Ms. Tayes, Plaintiffs' present Conservator. A brief summary of their testimony as it pertains to the issues of damages follows.

### A. Defendant's Testimony

Defendant did not dispute that he sexually abused Lisa, that Guy provided work without pay, or that some Plaintiffs' money was spent. He did, however, offer explanations for the use of Plaintiffs' funds and Guy's labor, all of which were weak and none of which were convincing.

With regard to the misuse of funds, Defendant claims not to recall ever buying anything with Plaintiffs' money, except a bedroom suite. He testified that the suite was bought for them, but when Plaintiffs discovered it would not fit it in their bedroom, Defendant placed it in the bedroom he shared with Richelle, where it remains to this day.

3

Defendant reluctantly conceded that he and his wife received some incidental benefit from Plaintiffs' money. In this regard, he claimed that when Plaintiffs received their disability checks they wanted to go out to dinner and so they all went out to a restaurant to eat.

As for Guy's work, Defendant claims that the two worked a garden that was twice as large as the one Defendant previously had so that not only he and Richelle, but also Plaintiffs, would benefit from the bounty. Defendant testified that Guy at times could not sit still and that, despite Defendant's protestations that it was too hot to garden, Guy would continue to work. He also claims that Guy fed the cattle of his own volition, even though Defendant had previously told him that he would be down the next morning to accomplish that chore.

Were the matter not so serious, Defendant's explanations would border on the laughable. The very notion that more than $105,000 was squandered on restaurant tabs defies credulity. Moreover, the accountings Defendant submitted to the Chancery Court cannot be reconciled with his testimony. Curiously absent from them is a reflection of the many dinners Plaintiffs and Defendant allegedly shared; yet the accountings show weekly payments to the Clay County Feed Store for cattle feed, even though Guy did not own cattle but Defendant did. The accountings also indicated the purchase of a tractor, yet Defendant specifically denied at the hearing that he used any of Plaintiffs' money to purchase that tractor. Further, Defendant pled guilty to theft of funds from Plaintiffs and the restitution order set the amount owed to be $105,480.84, the very sum Plaintiffs request in this action.

Regardless, and as the Court pointed out at the damages hearing, the liability "ship has sailed," with the sole question being the amount of damages to which Plaintiffs are entitled on each of their claims. The Court finds that Defendant was not a credible witness and will not reduce the

4

damage award based upon his testimony.

As for his assets, Defendant testified that he has a house on five acres of land in Clay County, Tennessee and that the property has been assessed at $38,000. He has nine head of cattle on the property. He also owns a 2012 Ford F-150 which was listed at $37,000 and on which he owes $12,000.

Defendant receives Social Security benefits (but allegedly cannot recall the monthly amount), as well as $660.00 in a monthly pension from the State of Pennsylvania. After being released from jail, Defendant received a check from Social Security for approximately $12,000.00, and paid $350.00 towards his court costs and restitution. He claims he still owes his attorney in the criminal case $7,000.

Although the Court has serious concerns about Defendant's overall credibility, this is the only evidence that the Court has as to his assets and income.

### B. Ms. Tayes's Testimony

During her testimony, Ms. Tayes painted a bleak picture of Plaintiffs' life under the care of Defendant. In fact, in her years as a Conservator, she has not seen anything quite so bad. Defendant had complete control over Plaintiffs' lives and their money, and he used that control for his own needs and evil desires.

With regard to Defendant's admitted sexual abuse of Lisa, Ms. Tayes testified:

It's the most horrific thing. I've been doing this for 18 years and I have never seen a case as bad as this and what its done emotionally to Lisa, the sexual abuse. And it has spilled over into Guy and Lisa's personal relationship, you know. It's – you know, she cries. She feels horrible about her sister [Richelle]. He told her that – and Lisa's mentality is such that it's the same as molesting a child. He [Defendant] would tell her I will get you candy. I will buy you something at the dollar store if you will have sex with me.

5

(Hrg. Tr. at 30). To this day, Lisa constantly cries and talks about the abuse, and it is something that she cannot put behind her. Even the simplest things, like last year's annual physical exam, had to be put off because Lisa could not cope with it emotionally. Ms. Tayes is not sure if Lisa "will ever fully recover from what [Defendant] did to her." (Id. at 31).

Also according to Ms. Tayes, Guy was forced to perform manual labor on Defendant's small farm. This included mowing grass, pulling weeds, cleaning, and taking care of and feeding the cattle. Guy was never paid for his work. Based upon a fair market value of $900 per month for a six year period, Ms. Tayes estimates that the value of Guy's uncompensated work during the time that Defendant was Conservator to be $64,800.

Upon her appointment as conservator, Ms. Tayes went about ascertaining Plaintiffs' assets and discovered "huge sums of money missing." Plaintiffs' income was such that they should have been able to live very comfortably. However, they lived in a filthy and dilapidated trailer that they were purchasing from Defendant. Although Defendant claims in his accountings that he utilized funds to purchase a bedroom suite, refrigerator, and washer and dryer for Plaintiffs, none of those items were present in the trailer. Instead, Plaintiffs had a vintage gold refrigerator that had mold on the inside, no dryer, and an old malfunctioning washer. As for the bedroom suite, Puckett's Furniture, where it was purchased, informed Ms. Tayes that it was delivered to Defendant's home and was purchased by Defendant for his wife because she had cancer.

Defendant purchased other big ticket items with Plaintiffs. money, including a tractor. He also paid for cattle feed with their money on a weekly basis. All totaled, Ms. Tayes calculated that Defendant used at least $105,480.84 of Plaintiffs' money for his own benefit.

## III. FINDINGS AND CONCLUSIONS

1. Plaintiffs are entitled to a default judgment because Defendant has not answered or otherwise responded to the Complaint. Fed. R. Civ. P. 55(b).

2. By virtue of Defendant's default, he has admitted liability on each of the claims asserted by Plaintiff. See Flynn v. People's Choice Home Loans, Inc., 440 F. App'x 452, 455 (6th Cir. 2011); Antoine v. Atlas Turner, Inc., 66 F.3d 105, 110 (6th Cir. 1995). Moreover, Defendant pled guilty to sexual abuse and theft charges and, while the guilty plea may not have preclusive effect, it is still relevant and admissible. In re James M. Cannon Family Trust, 2012 WL 5993736, at *5 (Tenn. Ct. App. Nov. 30, 2012).

3. "'It is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly.'" Vesligaj v. Peterson, 331 F. App'x 351, 355 (6th Cir. 2009) (quoting Pope v. United States, 323 U.S. 1, 12 (1944)).

4. "The exact amount [of damages] to be awarded is left to the sound discretion of the trier of fact." Regions Bank, N.A. v. Williams, 2014 WL 575889, at *8 (Tenn. Ct. App. Feb. 12, 2014). "The injured party should be fully compensated for all losses caused by the wrongdoer's conduct, with the goal being 'to restore the injured party, as nearly as possible, to the position the party would have been in had the wrongful conduct not occurred.'" Grimes v. Hancock, 2012 WL 2412847, at *1-2 (Tenn. Ct. App. June 26, 2012) (quoting, Waggoner Motors v. Waverly Church of Christ, 159 S.W.3d 42, (Tenn. Ct. App. 2004)). "The proof must enable the trier of fact to make a fair and reasonable assessment of the claimed damages," and "must be as certain as the nature of the case permits." Id.

5. Plaintiffs seek $105,480.84 on their breach of fiduciary duty and conversion/embezzlement claims. This request is fully supported by the record, including Ms. Tayes's testimony and the accountings that were submitted to the Chancery Court. It is also supported by Defendant's guilty plea and the judgment requiring restitution entered by the Clay County Circuit Court. In this regard, the Court specifically rejects Defendant's incredible explanations as to the use of Plaintiffs' funds.

6. Tennessee has enacted a statute to protect the elderly and disabled adults.[4] So far as relevant, the Tennessee Adult Protection Act provides:

> (b) In addition to other remedies provided by law, an elderly person or disabled adult in that person's own right, or by conservator or next friend, shall have a right of recovery in a civil action for compensatory damages for abuse or neglect, sexual abuse or exploitation as defined in this part or for theft of such person's or adult's money or property whether by fraud, deceit, coercion or otherwise. . . .
>
> \* \* \*
>
> (d) Damages shall include compensatory damages and costs where it is proven that a defendant is liable for abuse or neglect, sexual abuse or exploitation as defined in this part or for theft of such elderly person's or disabled adult's money or property whether by fraud, deceit, coercion or otherwise. . . .
>
> (e) In addition to the damages described in (d), a defendant may also be found liable for punitive damages in accordance with applicable common law standards.

Tenn. Code Ann. § 71-6-120.

7. Defendant sexually abused Lisa while in a position of trust and authority. He sought sexual favors in exchange for candy or a trip to the dollar store from a person who, due to her mental

---

[4] Under the statute, a "[d]isabled adult means a person who is eighteen (18) years of age or older and who meets one (1) of the following: (A) Has some impairment of body or mind that makes the person unfit to work at any substantially remunerative employment; (B) Lacks the capacity to consent; (c) Has been certified as permanently and totally disabled by an agency of this state or the United States that has the function of so classifying persons; or (D) Has been found to be incompetent by a court of proper jurisdiction[.]" Tenn. Code. Ann. § 71-6-120(2).

capacity, could not consent. This type of conduct "is highly reprehensible, both in a moral sense and in its almost total contempt for the personal integrity and autonomy of the female victim[.]" Coker v. Georgia, 433 U.S. 584, 597 (1977).

8. Lisa seeks $200,000 as damages for Defendant's sexual abuse. The Court will grant this request, even though it may actually be modest under the circumstances.

9. Under the forced labor statute, one who "obtains the labor or services of a person" through the threat of "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm," 18 U.S.C. § 1989(a) & (d), may be subjected to criminal penalties and civil liability. One who is subjected to forced labor "may bring a civil action against the perpetrator . . . and may recover damages and reasonable attorneys fees." 18 U.S.C. § 1595(a).

10. Guy seeks $64,800 on his forced labor claim. That figure is based upon Ms. Tayes's testimony that the reasonable value of his services was $900 per month for six years. Exactly how that figure was derived is not clear from the record, although Ms. Tayes's testified that it was based upon the minimum wage. Still, it appears that Ms. Tayes's presumed that Guy was forced to work regular hours, day in and day out, but the preponderance of the evidence does not support that conclusion. All the Court knows from the evidence is that Guy weeded, cleaned, mowed, and fed the animals which were few in number and on a five acre lot.

11. "'Once the existence of damages has been shown," a factfinder may "draw reasonable inferences and make a fair and reasonable assessment of the amount of damages.'" La Quinta Corp. v. Heartland Properties LLC, 603 F.3d 327, 342 (6th Cir. 2010) (internal citations omitted). Although hard "damages need not be proved with mathematical certainty," they must be proved with at least "reasonable certainty." Clinch Valley Printing Co. v. International Hot Rod Ass'n., 4 F.

9

App'x 303, 305 (6th Cir. 2001) (citing Lamons v. Chamberlain, 909 S.W.2d 795, 801 (Tenn. Ct. App. 1993)). The Court cannot say with any reasonable certainty that Guy worked regularly and, having fully considered the record, the Court will award him $25,000 on his forced labor claim.

12. Plaintiffs also seek punitive damages under Tennessee law. In determining such an award, a factfinder is to consider:

> (1) The defendant's financial affairs, financial condition, and net worth;
>
> (2) The nature and reprehensibility of defendant's wrongdoing, for example (A) The impact of defendant's conduct on the plaintiff, or (B) The relationship of defendant to plaintiff;
>
> (3) The defendant's awareness of the amount of harm being caused and defendant's motivation in causing the harm;
>
> (4) The duration of defendant's misconduct and whether defendant attempted to conceal the conduct;
>
> (5) The expense plaintiff has borne in the attempt to recover the losses;
>
> (6) Whether defendant profited from the activity, and if defendant did profit, whether the punitive award should be in excess of the profit in order to deter similar future behavior;
>
> (7) Whether, and the extent to which, defendant has been subjected to previous punitive damage awards based upon the same wrongful act;
>
> (8) Whether, once the misconduct became known to defendant, defendant took remedial action or attempted to make amends by offering a prompt and fair settlement for actual harm caused; and
>
> (9) Any other circumstances shown by the evidence that bear on determining the proper amount of the punitive award.

Wilson v. Americare Systems, Inc., 2014 WL 791936, at *2 (Tenn. Ct. App. Feb. 25, 2014) (citing McLemore v. Elizabethton Med. Investors, Ltd. P'ship, 389 S.W.3d 764, 780 (Tenn. Ct. App.

2012)).[5]

13. Except for Defendant's apparently limited means and net worth, the relevant factors all point towards the imposition of a substantial punitive damages award. Defendant's conduct was unquestionably reprehensible and a breach of the public's trust. His motivation was purely personal, both pecuniary and sexual, and severely impacted the lives of two individuals under his care. His abuse of power over individuals of limited mental capacity continued for many years. Once the theft was exposed, Defendant made no effort to repay what he stole, and Plaintiffs were forced to bring this suit to recover not only the stolen funds, but also to seek compensation for Lisa's sexual abuse and Guy's forced labor.

14. Having fully considered the relevant factors, the Court will award Plaintiffs $350,000 in punitive damages.

15. Under both the Tennessee Adult Protection Act and the federal forced labor statute, Plaintiffs are entitled to an award of attorneys fees. At the hearing, Plaintiff's requested $10,000 in fees. Notwithstanding the fact that Plaintiffs dropped that request in their proposed findings given the substantial damages they seek and "Defendant's financial situation," (Docket No. 37 at 20), the Court will awarded the fees originally requested. Cases such as this that expose significant wrongdoing and harm by those cloaked with authority are to be encouraged, and lawyers who bring such suits should be reasonably compensated.

16. Finally, Plaintiffs seek as costs $131.40, the amount they paid for the preparation of the damages hearing transcript. They are entitled to that request pursuant to Rule 54(d) of the Federal

---

[5] These considerations are commonly known as the "<u>Hodges</u>" factors, having been derived from the Tennessee Supreme Court's decision in <u>Hodges v. S.C. Toof & Co.</u>, 833 S.W.2d 896 (Tenn. 1992).

Rules of Civil Procedure and 28 U.S.C. § 1920. They are also entitled to recover the $350.00 filing fee assessed by the Clerk. See Nat'l Truck Equip. Ass'n v. National Highway Traffic Safety Admin., 972 F.2d 669, 674 (6th Cir. 1992).

## IV. CONCLUSION

Plaintiffs' Motion for a Default Judgment will be granted and they will be awarded damages in accordance with the foregoing.

An appropriate Order will be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE